Knight Newspapers, Incorporated, Successor to The Beacon Journal Company, v. Commissioner.
Knight Newspapers, Inc. v. Commissioner
Docket No. 110321.
United States Tax Court
1943 Tax Ct. Memo LEXIS 434; 1 T.C.M. (CCH) 663; T.C.M. (RIA) 43106; February 25, 1943
*434 C. Blake McDowell, Esq., 2200 First Central Tower, Akron, O., and Edwin W. Brouse, Esq., for the petitioner. W. W. Kerr, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income tax for two periods, a taxable year ending June 30, 1939, and income tax and personal holding company surtax for a taxable period from July 1, 1939 to December 31, 1939. The petitioner agrees to a deficiency of $430.46, determined by the respondent for the first period; while the respondent admits, as to income tax, that there was overassessment of $5,950.75 for the second period. In personal holding company surtax for the second period, a deficiency of $121,086.87, and penalty of $30,271.72 was determined in the deficiency notice, and the entire amounts are in issue. The facts were stipulated, except two income tax returns and a form of stock certificate introduced in evidence. We find the facts to be as stipulated and as set forth in the returns and certificate. The returns were filed with the collector at Cleveland, Ohio, for the eighteenth Ohio district. The facts may be briefly stated as follows: [The Facts] The petitioner, organized in 1941, is the successor *435 of The Beacon Journal Company, which was organized in 1897 under Ohio law. Hereinafter, for convenience, The Beacon Journal Company, will sometimes be referred to as petitioner. The purpose of The Beacon Journal Company, duly carried out, was to publish a daily newspaper, Akron Beacon Journal, which had been published since 1840. The publication was continued until September 1, 1938. On that date, in order to effect a consolidation with The Akron-Times Press Company, without giving the stockholders of that company an interest in certain other assets owned by the petitioner, the assets having connection with publication of the Akron Beacon Journal were transferred to a new corporation, The Beacon Journal Publishing Company, to which were also conveyed the assets of The Akron-Times Press Company. The petitioner received all of the stock of the new company, but 30 per cent thereof was transferred to The Akron-Times Press Company. After September 1, 1938, the petitioner owned 70 per cent of the capital stock of The Beacon Journal Publishing Company, and all of the outstanding common stock of The Miami Herald Publishing Company (hereinafter sometimes called Herald), which it had acquired *436 in October 1937. That company, under different names had been in existence since 1907, under the laws of Florida. It also had outstanding preferred stock. Since September 1, 1938, and to December 31, 1939, 80 per cent of petitioner's gross annual income was personal holding income as defined in section 502 of the Internal Revenue Code, and from July 1, 1939, to December 31, 1939, inclusive, more than 50 per cent in value of petitioner's outstanding shares was owned directly or indirectly by not more than five individuals. Accordingly, it is agreed that the petitioner is a personal holding company. On December 30, 1939, at a meeting of the directors of The Miami Herald Publishing Company, a dividend of $7.00 per share was declared for the year 1939, and the amount thereof, $239,600, was credited on the books of that company to the credit of the petitioner, on an account of $261,434.58 then owing by the petitioner to Herald. In its income tax return for 1939, Herald reported $271,760 dividends paid in cash to its stockholders out of net income reported in the amount of $421,878.40. The return showed $585,010.67 surplus and undivided profits at the end of 1938. The petitioner on its *437 income tax return for the period from July 1, 1939, to December 31, 1938, reported income of $239,635 from dividends from Herald, and $147,000 from The Beacon Journal Publishing Company. Other income reported was $6,099.59 interest, and $1,530.00 rents. The petitioner keeps its books and files its income tax returns on the accrual basis of accounting. At the time of the declaration of dividends on December 30, 1939, The Miami Herald Publishing Company had outstanding $650,000 par value preferred stock. As shown on the certificates of preferred stock, the company could declare and pay dividends out of surplus legally available for payment of dividends provided current assets exceeded current liabilities by $65,000, after the payment of such dividend. On December 2, 1940, a meeting of the directors of Herald was held, the minutes of which read: The regular monthly meeting of the company was held December 2nd, 1940. The treasurer gave his report and generally commented upon the conduct of the business. Mr. James L. Knight explained that a resolution should be passed rescinding the dividend declared on the common stock in the meeting held December 30, 1939, and thereupon presented *438 the following resolution: "Whereas, in December 1939, a dividend of $7.00 per share was declared upon the common capital stock of the company, and "Whereas, this dividend was paid in order to cancel an account due and owing to The Miami Herald Publishing Company by The Beacon Journal Company of Akron, Ohio, said account having been incurred by virtue of payments made in 1937, 1938 and 1939 by The Miami Herald Publishing Company of items that were due and owing by The Beacon Journal Company, or for money advanced to The Beacon Journal Company, and "Whereas, there was no cash paid at the time of the declaration of said dividend, but a credit was given to The Beacon Journal Company upon said account upon the books of The Miami Herald Publishing Company, and "Whereas, it appears that The Miami Herald Publishing Company did not have an earned surplus sufficient to pay said dividend, and therefore, said dividend so declared and charged was illegal and void. "NOW, THEREFORE, BE IT RESOLVED, THAT the action taken by the directors of The Miami Herald Publishing Company on the 30th day of December, 1939, whereby a dividend was declared of $7.00 per share upon the common capital stock of *439 the company, be and the same is hereby repealed, rescinded and held for naught, and the officers of The Miami Herald Publishing Company are hereby directed to cancel upon the books of the Company the credit given to The Beacon Journal Company on account of the declaration of said dividend and to reinstate upon the books of the company the amount that was credited by virtue of said dividend heretofore illegally authorized to be paid." Said resolution was seconded and upon being put to vote was unanimously carried. There being no further business, the meeting on motion duly made and seconded, adjourned. In compliance with the resolution of rescinding, Herald canceled the credit for said dividend on its books and petitioner recharged the Herald for the amount of said dividend. John S. Knight, J. H. Barry, and James L. Knight were president, vice president, and secretary-treasurer, respectively, of The Miami Herald Publishing Company and were on the board of directors of that company for the year 1939. The same individuals, together with Clara I. Knight, formed the board of directors of the petitioner corporation for the year 1939. The record herein is insufficient to show whether *440 or not the current assets of Herald exceeded current liabilities by $65,000 on December 30, 1939. The petitioner filed on personal holding company return, Form 1120-H, until January 1, 1941. It filed its income and excess profits tax return on March 14, 1940, on Form 1120, stating, among other things, "No" in answer to the question, "Is the corporation a personal holding company within the meaning of section 501 of the Internal Revenue Code? * * * If so, an additional return on Form 1120-H must be filed"; also that it was a publishing company; that it owned 50 per cent or more of the voting stock of another corporation (and attached a schedule showing ownership of all of the stock of The Beacon Journal Publishing Company and The Miami Herald Publishing Company). On the list of business classifications a check appears opposite "Newspapers" and "Personal holding companies" is not checked. The petitioner was under the belief that it was not a personal holding company. [Opinion] Since the petitioner agrees that it was during the taxable period a personal holding company, only two questions remain for our consideration. The first is whether the respondent erred in including in *441 personal holding income $239,600.00, representing a dividend by petitioner's subsidiary and credited to the petitioner against an account payable by it, the dividend having been later, in December 1940, set aside as being contrary to the subsidiary's corporate powers, and the credit canceled and the amount recharged by the petitioner to the subsidiary. On this point the gist of the petitioner's argument is that the declaration of dividend was illegal, because no such dividend could be declared when the corporate assets did not exceed liabilities by $65,000, that therefore the dividend could have been attacked and set aside by the preferred creditors, or recovered from the petitioner by The Miami Herald Publishing Company; therefore, that the dividend, consisting of a credit, and not cash, was illegal and ineffective to constitute income to the petitioner. In our opinion, the petitioner has failed to show error by the Commissioner. In the first place, the record before us does not show that current assets of Herald exceeded liabilities by less than $65,000 (which condition was necessary before dividends could be declared), though the petitioner urges that liabilities exceeded assets *442 by $106,652.35. Those figures are the result of examination of a balance sheet attached to the income tax return of the Herald; but two things make it impossible for us to depend upon them. First, the balance sheet is as of December 31, 1939, whereas the dividend was declared December 30, 1939. Great changes in either assets or liabilities could have been made on December 31. That day, perhaps more than any day in the year, when one is considering matters of income tax, may not be disregarded. Whether either liabilities or assets were on that day altered is beyond the record here. Secondly, the ability of the corporation to declare a dividend depended upon the balance of "current" assets and liabilities. In its calculations the petitioner has regarded certain items as current, when the entries, the only evidence on the subject, leaves open the question whether in fact they are current. The time element enters here. [1] As examples, "Notes and accounts receivable" considered by the petitioner as entirely current, may, without further explanation, include matters not current; an item of "Real Estate - Net" does not appear to be current; "Other Receivables & Investments" may or may not *443 be current: while among liabilities "Accounts payable" - $241,203.27 - may include accounts not currently payable; an item of $115,000 for Bonds, notes, and mortgages payable," with original maturity of one year or more, appears on its face non-current rather than current; "Deferred Income" $11,250.00 is unexplained. With a record containing no explanation of these matters, and in particular considering the value of Herald's business, obviously we may not assume that these items are all current. In any event, and regardless of whether the items were current so that current assets failed to exceed current liabilities by the requisite $65,000, we think the petitioner is still not shown to have received no income by virtue of the dividend. It reported the amount as such on its income tax return, and Herald reported it as a dividend paid. It is apparent that it was then so considered. The management of both corporations was, in effect, the same, and petitioner was in control of Herald. Though the petitioner urges that Herald's preferred stock was not owned by petitioner, the record is silent on that subject. It is apparent that the financial status of both corporations reflected the dividend *444 as income paid and received. It was plainly subject to petitioner's command, even though there was possibility, under circumstances not shown here, that it might have been the subject of suit for repayment. We conclude that it was income, and that the Commissioner is not shown to have been in error. North American Oil Consolidated v. Burnet, 286 U.S. 417; National City Bank of New York v. Helvering, 98 Fed. (2d) 93. *445 Did the Commissioner err in adding the 25 per cent penalty for failure to file a personal holding company return under section 291 of the Internal Revenue Code? [2] The petitioner pleads ignorance of the law and it is stipulated that the petitioner was of the belief that it was not a personal holding company. We take that stipulation to mean that in good faith the petitioner's officers considered the petitioner to be no personal holding company. The respondent invokes the rule that ignorance of the law does not excuse. The text of section 291, however, itself indicates that in this matter that legal maxim is not wholly applicable, for an exception is stated: "unless it is shown that such failure (to file the return) is due to reasonable cause and not due to wilful neglect." We are then to inquire whether there is such reasonable cause and absence of wilful neglect. Wilful neglect is eliminated by the stipulation that petitioner was of the belief that it was not a personal holding company. Does reasonable cause, for failure to file, here appear? The proper return, on Form 1120-H was filed January 1, 1941, more than a year prior to the issuance of the deficiency notice. In this respect *446 the situation differs from that before us in Samuel Goldwyn, Inc., Ltd., 43 B.T.A. 1086. Though the respondent points out that petitioner's income was all from investments, as reason for holding that there was no reasonable justification for any belief that the petitioner was not a personal holding company, and though it is true that, with the exception of a small amount of rents and interest, petitioner's income was from dividends from its two subsidiaries, we think other circumstances require examination here. For almost exactly a half century the petitioner had been an operating company, publishing a newspaper. Then, about one and one-half years before the return here was due, it became entirely a holding company, not publishing but owning two publishing companies. Though the record here is silent as to advice given the petitioner, it is a fair implication from the stipulation that, having formed a belief that the petitioner was not a holding company, the petitioner had been so advised. Though it had acquired stock of Herald in October 1937, the petitioner also operated its publishing business, as it had long done until September 1938. The fact that *447 it then became owner of the stock of The Beacon Journal Publishing Company was due to the fact that the owners of The Akron-Times Press Company were not to share ownership in other than the assets devoted to publishing the paper in Akron, rather than any set intention that the petitioner embark upon a business of holding other corporations. The return filed in due time in March 1940 concealed no facts, for it showed the ownership of the stock in two publishing companies and receipts of practically all of its income therefrom. It did therein deny being a personal holding company, but this is consistent with its belief in that regard. In Girard Investment Co. v. Commissioner, 122 Fed. (2) 843, the taxpayer, as here, answered the question as to personal holding company in the negative. It did not disclose its stock ownership or the percentage of its income derived from interest. Yet, the court inclined to the belief that the statute had been satisfied. Here a full showing of stock ownership and earnings appeared. In other words, the petitioner stated the facts, but denied the conclusion. We do not think that under such facts, particularly since the proper *448 return was filed before the deficiency was determined, we should approve the penalty sought. In our opinion the petitioner was merely slow to realize its change from its old business of publishing. We find reasonable cause for the belated filing, and on this point hold for the petitioner. *449 Decision will be entered under Rule 50. Footnotes
1. Kester, Accounting Theory and Practice, Vol. 1, p. 26, says: "This group of assets, comprising Cash, Notes and Accounts Receivable, Merchandise, and so forth, is called the group of Current Assets. Asset items are classified as current if conversion into cash is expected within three to six months. These are the assets to which the current creditors of the business will have to look for the payment of their claims. "The claims of current creditors are usually included under the titles Notes Payable, Accounts Payable, and Accrued or Unpaid Expenses. The classification of a creditor in the current liability group is usually determined on a time basis. Thus, all debts that will have to be met within six months' or one year's time from the date of the balance sheet are usually classed as Current Liabilities." Montgomery, Auditing Theory and Practice, Vol. 1, p. 76, reads: "Settling first the matter of intention, there is little controversy regarding the meaning of the term 'current assets.' Speaking generally, the term includes only those assets which are for sale in the ordinary course of business. * * *"↩
2. SEC. 291 FAILURE TO FILE RETURN. In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to wilful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612 (d) (1).↩